[No. 18543.  Department Two.  May 12, 1925.]

ARCHIE LUTHER *et al., Respondents,* v. WEST SIDE
TELEPHONE COMPANY, *Appellant.*[1]

WITNESSES (101)—CREDIBILITY—CROSS-EXAMINATION TO DISCREDIT
WITNESS.  In a personal injury case, it is error to permit the de-
fendant's principal stockholder to be cross-examined to show that
he had brought in a medical expert and suppressed his evidence by
sending him home with $50; since a party may select its own
witnesses.

EVIDENCE (67)—EVIDENCE ADMISSIBLE BY REASON OF ADMISSION OF
SIMILAR EVIDENCE.  In a personal injury case, it is not error to
allow testimony of the condition of other telephone poles of the
defendant, to the same extent as introduced by the defendant.

Appeal from a judgment of the superior court for
Okanogan county, Neal, J., entered December 20, 1923,
upon the verdict of a jury rendered in favor of the
plaintiff for personal injuries.  Reversed.

*Corbin & Easton,* for appellant.

*P. D. Smith,* for respondents.

MITCHELL, J.—Archie Luther and his wife, Annie,
brought this action against the West Side Telephone
Company to recover $10,000 damages for injuries re-
ceived by Mrs. Luther as the result of a blow caused
by a telephone pole and wire, blown down on defend-
ant's telephone system, in Okanogan county.  The
principal injury complained of was that the hearing
in her right ear had been permanently destroyed.  It
was alleged that the injuries were inflicted because of
the negligence of the defendant in not exercising due
care and diligence in the upkeep and maintenance of its
line, and in permitting the poles to become rotten and
in an unsafe condition.  The answer consisted of a gen-

[1]Reported in 235 Pac. 783.

eral denial of the material allegations of the complaint, together with an affirmative allegation that the poles and wire were broken and blown down because of a severe wind storm, and not because of any rotten condition of the poles or any fault, negligence or carelessness of the defendant. The affirmative answer was denied by the reply of the plaintiffs.

On the issues thus made up, the case was tried to a jury, who returned a verdict in favor of the plaintiffs in the sum of $5,400. The defendant interposed a motion for a new trial, which the court overruled on condition that the plaintiffs accept a reduction of $1,000 from the verdict. Respondents accepted the reduction, and the court entered judgment for $4,400 and costs in favor of the plaintiffs, from which judgment the defendant has appealed.

The first assignment is that error was committed during the cross-examination of W. S. Ridge, an important witness on behalf of the telephone company. The witness, in direct examination, testified that he and members of his family owned more than half of the stock of the telephone company; that he, his wife and a son were directors of the company; and that for a number of years he had been president and manager of the company. He testified further, with circumstantial detail, of the condition of the telephone poles and wires and of the inspection and care given in their upkeep, and that he was present at the time Mrs. Luther was injured, he being engaged at that place and time in repairing the line on account of damage caused by high winds the previous day and night.

Immediately, upon cross examination of this witness, the following occurred:

"Mr. Smith: Mr. Ridge, do you know a gentleman by the name of Dr. Redner? A. I don't get the—do I know? Q. Do you know a man by the name of Dr.

Redner? A. I met the Doctor, yes sir. Q. Was he in the city here night before last? Objected to as improper cross examination. Court: He may answer. I suppose it is preliminary. A. He was. Q. He is an ear specialist from Wenatchee, isn't he? A. I couldn't tell you whether he is or not. I have heard that he was. Q. Did you give him $50 yesterday morning and send him back home? Mr. Corbin: That is objected to as incompetent, irrelevant and immaterial, having no bearing on any of the issues of this case, unless he can show that Mr. Ridge has gotten one of their specialists out of town. Mr. Smith: It doesn't make any difference whose specialist he is. If he has done anything to suppress evidence we can show it. Court: It would show his interest and credibility, to assist the jury in fixing the credit and weight. Mr. Smith: Did you give him $50 yesterday morning and send him back home to Wenatchee? A. I gave him $50, yes sir. Q. He was brought here for the purpose of examining Mrs. Luther and become your witness in this case, wasn't he? A. Yes sir, he was. Q. Did you make any effort to have him examine Mrs. Luther? A. His price was too — Q. Wait. Just answer the question. A. No, I didn't, to answer the question squarely. Q. Mr. Ridge, your counsel advised you that you were entitled to have Mrs. Luther examined by a specialist, didn't he? Objected to as not proper cross examination, incompetent, irrelevant and immaterial. Court: I imagine it will stand until the proposition is refuted that he would have a right to have her examined. Mr. Smith: Well, it may be admitted that he did have that right. I am through with it. Mr. Corbin: We are not asking to have that in the record at all. Any rights that we have that we want to exercise we will exercise. We object to that evidence as having a tendency to prejudice the jury, having no bearing whatever on the case. Court: You may answer. Exception. Mr. Smith: Your counsel advised you, did he not? Mr. Corbin: Your honor understands the objection is also on the grounds of improper cross examination? Court: I take it for granted it is on the theory of interest and credibility, will be all. He may answer. Exception. A. State it again. Q. Question read. A. Yes.''

Then, upon counsel for the respondents changing the cross-examination to another matter, counsel for the appellant interrupted stating:

"Mr. Corbin: Just a minute. If you are through with the Redner matter, I move that the court strike all that evidence for the reason that it is incompetent, irrelevant and immaterial, not proper cross examination, has no possible bearing on any of the issues in this case and can only tend to prejudice the jury and leave the inference that Mr. Ridge was attempting to suppress evidence, getting witnesses away from the presence of the court."

The motion was denied. Exception noted.

The trial of the case occurred in Okanogan county. Manifestly Dr. Redner, who was wholly unacquainted with Mrs. Luther for aught that appears in the record, was called from another county on behalf of the appellant for a consultation looking to his becoming a witness as an expert. Whether he examined or was asked to examine Mrs. Luther, or whether he was consulted purely as an expert and, if so, whether the appellant desired to use him as a witness, or whether his charges were too great to be engaged by the appellant, was no concern whatever of the respondents. The appellant had the unquestioned right to refuse to employ Dr. Redner or call him as a witness, and to pay his expenses or not for going to Okanogan, without any charge or imputation of bad faith, the suppression of evidence, or as in any manner affecting the credit or weight of the witness under cross examination. In defense of the questions, it was counsel's accusation that the witness was suppressing evidence and upon that theory the court allowed the questions, stating twice that the matter went to the credit and weight of the testimony of the witness. It was a witness who had testified generally upon important matters on behalf of the appellant. It is common knowledge that often, up-

on consultation with a prospective witness, it is learned that, for one or more reasons, his evidence would be of no value; whereupon, to deny the litigant the right not to put such person on the witness stand except at the risk of being charged with the offense of suppressing evidence, would seriously interfere with the legitimate preparation for and trial of cases. It must be assumed, we think, that when the questions were asked for the purpose stated and, over the objections of opposing counsel, received the approval of the trial court to the extent and for the reasons given by the court, that the effect on the jury was prejudicial. The verdict found was greater than the trial court would countenance.

It is further claimed by the appellant that the court erred in allowing testimony on behalf of the respondents concerning the condition of other portions of the telephone line than that on which the accident happened. As we understand the record, such examination went no further than was justified by appellant's introduction of evidence to the same extent.

Other formal assignments of error require no further or separate discussion.

Reversed, with directions to the trial court to grant a new trial.

HOLCOMB, MAIN, FULLERTON, and MACKINTOSH, JJ., concur.